IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JULIUS WILSON, ) | C/A No. 2:15-CV-2170-DCN-MGB |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| FIRST CLASS PATROL OFFICERS ) | |
| MICHAEL SLAGER, BRAD WOODS, ) | |
| and JEROME CLEMENS; NORTH ) | REPORT AND RECOMMENDATION |
| CHARLESTON POLICE ) | |
| DEPARTMENT, CITY OF NORTH ) | |
| CHARLESTON, and EDDIE ) | |
| DRIGGERS, both Individually and in his ) | |
| Official Capacity as Chief of Police, ) | |
| ) | |
| DEFENDANTS. ) | |

_____

This is a civil action filed by Julius Wilson, through counsel, alleging causes of action under 42 U.S.C. §§ 1983 and 1988 and the South Carolina Tort Claims Act ("Tort Claims Act"), S.C.Code Ann. §§ 15-78-10 et seq. (Dkt. No. 10.) Before the court is Defendants' Motion to Dismiss and Motion to Strike on Behalf of Defendants North Charleston Police Department, City of North Charleston, and Eddie Driggers. (Dkt. No. 17.) All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.

The Defendants' motion is made only on behalf of the North Charleston Police Department ("the Department"), the City of North Charleston ("the City"), and Eddie Driggers. The motion to dismiss seeks to dismiss the following claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and state law:

1. 42 U.S.C. § 1983 claims against the City and the Department;

    2. 42 U.S.C. § 1983 claims against Eddie Driggers;
    3. All Tort Claims Act claims against the City, the Department, and Driggers.

(Dkt. No. 17-1.) Additionally the Defendants' motion seeks to strike from the Amended Complaint the Plaintiff's claims for punitive damages, liability based on *respondeat superior,* and joint and several liability. (*Id.*) In the alternative, the Defendants' motion requests this court stay this action or cabin discovery against the City, the Department, and Defendant Driggers. (*Id.*) The Plaintiff responded to the Defendants' motion on July 13, 2015.[1] (Dkt. No. 22.)

### Factual Background

During all times alleged in the Amended Complaint, all officers with the Department were issued and carried tasers. (Dkt. No. 10 ¶ 20.) The Department allowed officers to utilize their tasers during encounters where a subject was noncompliant with an officer's commands. (*Id.* at ¶ 23.) The Plaintiff alleges the Department's taser use, taser policies and affirmative decisions and omissions of individual policymakers led to African Americans being disproportionally tased. The Plaintiff cites several specific incidents and media reports to support these assertions. (*Id.* at ¶¶ 25-30, 33, 44-46, 73-75.)

Defendant Slager was hired by the Department as a police officer in 2010 and was issued a taser. (Dkt. No. 10 ¶ 33.) On or around 2012, Eddie Driggers became the Chief of Police for the Department.[2] (*Id.* at ¶ 37.) Defendant Driggers continued the existing policies the Department had in place regarding taser use and was copied on all records regarding taser use. (*Id.* at ¶ 37.)

---

[1] The moving Defendants and the Plaintiff refer back to arguments made in their previous motions and response. (Dkt. Nos. 9 & 12.) The Defendants' first motion to dismiss (Dkt. No. 9) is moot because of the Amended Complaint (Dkt. No. 10.).

[2] Defendant Driggers asserts he was sworn in as Chief of Police on January 28, 2013. (Dkt No. 17-1 at 3.)

The Department does not provide any training regarding the use of force and taser use. (*Id.* at ¶¶ 42-44.) The Department delegates all training to the manufacturer of the tasers. This training focuses on the use of the tasers, not the use of force. (*Id.* at ¶ 43.) The City and Department have repeatedly come under scrutiny for officers' disproportionate use of tasers against African Americans. In response, officers in the Department have changed the wording of their reports when they use tasers to make the use appear justified. (*Id.* at ¶ 48.) The Department allows officers to justify the use of the tasers whenever physical force is used against a person, regardless of the degree of physical force necessary. (*Id.*)

In the early morning of August 25, 2014, the Plaintiff, an African American, was pulled over by Defendant Woods while driving to work on Dorchester Road in North Charleston. (Dkt. No. 10 ¶ 51.) The traffic stop was captured on Defendant Wood's dash camera. (*Id.* ¶ 54.) The Plaintiff gave Defendant Woods a valid Georgia driver's license. (*Id.* at ¶ 52.) The Plaintiff alleges Defendant Woods requested more officers respond to the scene because of the Plaintiff's demeanor, but states his demeanor was normal and not suspicious. (*Id.* at ¶¶ 53-54.) Defendant Woods approached the car after approximately 10 minutes along with Defendants Slager and Clemens. (*Id.* at ¶ 55.) Defendants Woods, Slager, and Clemens arrested the Plaintiff for driving with a suspended South Carolina driver's license. (*Id.* at ¶ 57.) The Plaintiff was forcefully removed from his vehicle and placed on his stomach on the ground. (*Id.* at ¶ 58.) The Plaintiff was on the ground on his stomach with his hands flat on the pavement above his head. (*Id.* at ¶ 58.) Defendant Woods physically placed the Plaintiff's right hand behind his back while Defendant Clemens placed the Plaintiff's left hand behind his back. (*Id.* at ¶ 60.) As the Plaintiff's hands were being placed behind his back, Defendant Slager stated "watch out! I'm

going to tase!." (*Id.* at ¶ 61.)  At this time, the Plaintiff was fully cooperative. (*Id.* at ¶P 59, 62.) Defendant Slager then shot his taser into the Plaintiff's back. (*Id.* at ¶ 63.)  Defendants Woods and Clemens allowed the taser to be shot into the Plaintiff. (*Id.* at ¶ 64.)  The Plaintiff writhed and experienced pain from the shock. (*Id.* at ¶ 65.)  Defendant Slager threatened to use the taser again but did not. (*Id.* at ¶ 67.)  The Plaintiff was then taken to Defendant Woods' police car and charged with driving under suspension. (*Id.* at ¶ 68.)

The Plaintiff was injured but denied medical treatment because he was scared of Defendant Slager. (*Id.* at ¶¶ 69-70.)  The City later dismissed the driving under suspension charge. (*Id.* at ¶ 71.)  Prior to tasing the Plaintiff, Defendant Slager had used his taser excessively and unnecessarily at least fourteen other times while working for the Department. (*Id.* at ¶ 72.)  In the past, the City, Department, and Driggers did not adequately investigate or act on Defendant Slager's taser use. (*Id.* at ¶¶ 75-78.)

## Standard of Review

The Defendants' Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On a 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). However, while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . .unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

## 42 U.S.C §1983 Claims

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

The Plaintiff alleges section 1983 claims based on constitutional violations of his right to be free from improper search and seizure, the use of excessive force, and due process violations. (Dkt. No. 10 at 18-20.) The Plaintiff further alleges all Defendants are liable under section 1983 for "deliberate indifference." (*Id.* at 20-22.)

1. <u>42 U.S.C. § 1983 claims against the City and the Department</u>

The section 1983 claims against the Department must be dismissed because the Department is not a person under section 1983. *See Spellman v. City of Columbia Police Dep't*, C/A No. 9:12-2376-TMC-BM, 2012 WL 5409626, at *2 (D.S.C. Sept. 28, 2012) *report and recommendation adopted*, C/A No. 9:12-2376-TMC, 2012 WL 5408023 (D.S.C. Nov. 6, 2012) (holding "The City of Columbia Police Department is a group of officers in a building and, as such, is not subject to suit under § 1983. Buildings and correctional institutions, as well as sheriff's departments and police departments, usually are not considered legal entities subject to suit."). Therefore as to the section 1983 claims against the Department, this court recommends the Defendants' Motion to Dismiss (Dkt. No. 17) be granted.

Assuming *arguendo* that the Plaintiff suffered a constitutional deprivation, the City "is only liable under section 1983 if it causes such a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, (1978)). *Carter* stated four ways that a city may be found liable through official policy or custom. "Municipal policy may be found in written ordinances and regulations,…in certain affirmative decisions of individual policymaking officials,…or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Carter,* 164 F.3d at 218. A municipal custom may be established "[o]utside of such formal decisionmaking channels…if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Id.* (quoting *Monell,* 436 U.S. at 691).

The doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell*, 436 U.S. at 691 (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). "A plaintiff's theory is most likely to slip into that forbidden realm when she alleges municipal omission-either a policy of deliberate indifference or the condonation of an unconstitutional custom." *Carter*, 164 F.3d at 218 (citing *Board of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quoting *Board of County Comm'rs*, 520 U.S. 405).

"A plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Id*. The Plaintiff's burden is to show that the municipality's decision was deliberately indifferent "to the risk that a violation of a *particular* constitutional or statutory right *will* follow the decision." *Brown,* 520 U.S. at 411, 117 (emphasis added); *see also City of Canton,* 489 U.S. at 391 ("[T]he identified deficiency ...must be closely related to the ultimate injury."); *Spell v. McDaniel,* 824 F.2d 1380, 1389-91 (4th Cir.1987); *Milligan v. City of Newport News,* 743 F.2d 227, 230 (4th Cir.1984). For municipal liability to attach, the policies or customs must have a "*specific* deficiency or deficiencies ... such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely

likely to happen in the long run." *Carter*, 164 F.3d at 218 (quoting *Spell,* 824 F.2d at 1390 (emphasis added by *Carter* court)).

The Plaintiff's burden is to have pled facts sufficient to establish the City is liable for the specific violations alleged—unlawful search and seizure, excessive force, and violation of due process—and that the risk of these violations was the direct result of official policy or custom. The Plaintiff alleges first that the Department's policy regarding taser use was a "noncompliance policy." (Dkt. No. 10 ¶23.)  The Plaintiff alleges the noncompliance policy was " a written ordinance and regulation" which "allowed…officers to use their Tasers based on a subject's simple noncompliance." (*Id.* at ¶¶ 23-24.)  This policy remained in place until an unspecified "committee" reviewed the policy in 2011 and recommended a new policy ("the physical force policy") be implemented. (*Id.* at ¶35.)  Based on the committee's recommendation, a new policy was made a "written ordinance and regulation within the [Department]." (*Id.* at ¶ 38.) At the time the new policy was made, the Plaintiff alleges the former noncompliance policy became a custom of the Department. (*Id*. at ¶¶48-49.)  The new policy stated that tasers may be used by officers "when [they] are required to use physical force for protection from assault and/or take a person into custody." (*Id.* at ¶ 36 (citing Alan Blinder, Manny Fernandez, and Benjamin Mueller, *Use of Tasers Is Scrutinized After Walter Scott Shooting*, N.Y. Times, June 1, 2015, at A1).)  The new physical force policy is still the policy of the Department and was the Department's written policy at the time of the Plaintiff's arrest. (*Id.*)

As to the original noncompliance policy, it was not in place at the time of the Plaintiff's arrest and therefore was not an "official policy" that could have caused the Plaintiff injury.  The Plaintiff alleges that the noncompliance policy remained a "custom" after it was replaced.  The

Plaintiff specifically alleges that officers within the Department began changing the wording of their incident reports to use phrases such as "resisted detainment" and "took an aggressive stance" to justify taser use under the physical force policy. (Dkt. No. 10 at ¶48.)  The Plaintiff alleges, based on records in the Department's possession, that the Department still allowed some taser use to be justified based on the noncompliance policy, despite it not being the written policy of the Department. (*Id.* at ¶49.)

Assuming all of the Plaintiff's allegations to be true, the Plaintiff has sufficiently pled facts to support that in August of 2014, the "official policy" regarding tasers being utilized only when physical force was necessary along with the "custom" of relying on the noncompliance policy were the cause of the Plaintiff's injury.   The physical force policy on its face does not appear insufficient or unconstitutional. However, the Plaintiff alleges several media reports and statistics of taser use by the Department showing tasers being used disproportionality against African Americans.  (*See* Dkt. No. 10 ¶¶26; 44.)  The statistics pleaded in the Amended Complaint include the time periods the noncompliance policy was in place and time periods the physical force policy was in place.

The Plaintiff also alleges that the physical force policy is deficient because it was not accompanied with specific training regarding the extent to which physical force with a taser should be used. (Dkt. No. 10 at ¶¶40-44.)  The Plaintiff alleges that the only training came from the taser manufacturer and was limited to the use of the taser, not the physical force policy. (*Id.*) "A failure to train police officers can amount to an actionable policy under § 1983 when it can be shown that it evidences 'deliberate indifference' to the rights of persons with whom the police come into contact. *Lester v. City of Gilbert*, 85 F.Supp.3d 851, 860 (S.D.W. Va. 2015) (quoting

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "[A] failure to train can only form a basis for liability if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Lytle v. Doyle*, 326 F.3d 463, 474 (4th Cir. 2003) (internal quotations omitted). A complete failure to train officers on when to use physical force and when the use of a taser is justified, as alleged by the Plaintiff, could be deliberate indifference. The Amended Complaint alleges that the only training received by officers was the mechanical operation of the taser. The Plaintiff alleges that the Department and the Chief of Police were aware of the constitutional violations being perpetrated. Allegedly, the Department continued to provide no training on the use of force and when taser use was justified. The Plaintiff has alleged sufficient facts to state a claim against the City.

As to the Plaintiff's claims that the noncompliance policy became a "custom" when the physical force policy was enacted, the Plaintiff has alleged sufficient facts to survive the Defendants' motion. The Plaintiff alleges the City was deliberately indifferent in allowing the custom to exist. *Carter* requires a custom to be "so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Carter,* 164 F.3d at 218 (quoting *Monell,* 436 U.S. at 691). The Plaintiff alleges that the noncompliance policy was still used to justify taser use (Dkt. No. 10 ¶49) and specifically alleges that officers merely changed the wording of their incident reports to use phrases such as "resisted detainment" and "took an aggressive stance" to justify taser use. (Dkt. No. 10 at ¶48.) These phrases gave the appearance that the use of tasers was justified under the new policy, even though, according to the Amended Complaint, these officers were using tasers based on simple noncompliance. The Plaintiff alleges that the City and Chief of Police were aware of the large volume of taser use

cited by the Plaintiff. The Plaintiff alleges the City and the Chief of Police acquiesced and accepted taser use without justification leading to excessive force being applied. Viewing the Amended Complaint in the light most favorable to the Plaintiff, the Plaintiff has stated a claim for deliberate indifference against the City.

*City of Canton* requires that "the identified deficiency…be closely related to the ultimate injury." 489 U.S. at 391. The Amended Complaint alleges that the Plaintiff's injuries are the result of the City failing to train officers on the use of tasers and excessive force. The Plaintiff's allegations are adequate to state a cause of action against the City. Therefore as to the section 1983 claims against the City, this court recommends the Defendants' Motion to Dismiss (Dkt. No. 17) be denied.

   2. <u>42 U.S.C. § 1983 claims against Eddie Driggers</u>

In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (citations omitted). The Fourth Circuit has stated a Plaintiff must show the following three elements to establish supervisor liability under section 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an

> "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," *Slakan,* 737 F.2d at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses…provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id.* (citations omitted).

The Plaintiff argues that Defendant Driggers is a proper defendant under section 1983 because he was aware of Department officers' use of tasers going back to 2005 and the committee report of 2011. (Dkt. No. 12-1 at 7.) Additionally, the Plaintiff alleges that Defendant Driggers knew that Defendant Slager had used his taser excessively and unnecessarily at least fourteen other times while working for the Department. The Plaintiff alleges that despite this knowledge, Defendant Driggers did not discipline Defendant Slager, ban him from carrying a taser, or provide any training to any officers in the Department as to when taser use was appropriate. The Plaintiff alleges that Defendant Driggers' inaction was the direct cause of the Plaintiff's injury. The Plaintiff has stated sufficient facts to allege a cause of action against Defendant Driggers. This court recommends that the Defendants' Motion to Dismiss (Dkt. No. 17) as to the section 1983 claims against Defendant Driggers be denied.

## Tort Claims Act Claims

The South Carolina Tort Claims Act, § 15-78-10 *et seq.* "governs all tort claims against governmental entities." *Hawkins v. City of Greenville*, 358 S.C. 280, 292, 594 S.E.2d 557, 563

(Ct. App. 2004) (citing *Flateau v. Harrelson,* 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct.App.2003)). All governmental entities may be held liable for their torts as a private individual would be liable subject to the limitations and exemptions of the Act. *Id.* (citing S.C. Code Ann. § 15-78-40 (Supp. 2003)). S.C. Code Ann. § 15-78-30(d) defines "governmental entity" as "the State and its political subdivisions." The Act is the exclusive remedy for any tort committed by an employee of a governmental entity. "An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except…if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70. The limitations and exemptions in the act must be liberally construed in order to limit the liability of the State. *Hawkins*, 358 S.C. at 292. "The governmental entity asserting the Act as an affirmative defense bears the burden of establishing a limitation upon liability or an exception to the waiver of immunity." *Id.* S.C. Code Ann. § 15-78-60 provides thirty seven "exceptions" to the limited waiver of sovereign immunity the Act provides. *Id.*

   1. <u>Tort Claims Act Claims against the Department and Defendant Driggers</u>

The Department and Defendant Driggers are not proper parties under the Tort Claims Act, and this court recommends such claims against them be dismissed.

> [A] person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually, unless the agency or political subdivision for which the employee was acting cannot be determined at the time the action is instituted. In the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant.

S.C. Code Ann. § 15-78-70(c); *see also Proveaux v. Med. Univ. of S. Carolina*, 326 S.C. 28, 30, 482 S.E.2d 774, 775 (1997). The proper party under section 15-75-70(c) is the City. The Plaintiff appears to concede this argument. (Dkt. No. 12-1 at 8.) Therefore, this court recommends that any claims made under the Tort Claims Act against the Department or Defendant Driggers be dismissed.

2. Tort Claims Act Claims against the City

The City argues it is immune from liability under the Tort Claims Act under several exceptions to the waiver of immunity contained in the act. (Dkt. No. 9-1 at 9-10.) The City claims immunity from liability resulting in any loss stemming from the following:

> (1) legislative, judicial, or quasi-judicial action or inaction;
> (2) administrative action or inaction of a legislative, judicial, or quasi-judicial nature;
> (3) execution, enforcement, or implementation of the orders of any court or execution, enforcement, or lawful implementation of any process;
> (4) adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies;
> (5) the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee;
> …
> (20) an act or omission of a person other than an employee including but not limited to the criminal actions of third persons;
> …
> (25) responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner….

S.C. Code § 15-78-60(1)-(5),(20),(25). The City provides no analysis of how the seven subsections listed apply to the case at bar. (Dkt No. 9-1 at 9-10.) Reviewing the exceptions cited

by the city, the officers' conduct would not fall under subsections (1), (2), (3)[3], (4), (20), or (25).

As to subsection (5), "[t]o establish discretionary immunity, the governmental entity must prove that the governmental employees, faced with alternatives, actually weighed competing considerations and made a conscious choice." *Pike v. S. Carolina Dep't of Transp.*, 343 S.C. 224, 230, 540 S.E.2d 87, 90-91 (2000) (citation omitted). Furthermore, the City "must show that in weighing the competing considerations and alternatives, it utilized accepted professional standards appropriate to resolve the issue before them." *Id.* The City has not met its burden under *Pike*. The City has not shown that the officers weighed competing considerations and made a conscious choice. Therefore, as to the claims brought against the City under the Tort Claims Act, this court recommends the Defendants' Motion to Dismiss be denied.

## Motion to Strike

1. Punitive Damages

"[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). The Plaintiff attempts to argue *Newport* is not a complete bar against punitive damages and cites to *Webster v. City of Houston*, 689 F.2d 1220 (5th Cir. 1982). Like *Newport*, *Webster* held that the city of Houston was immune from punitive damages. Following *Newport* and *Webster*, the Supreme Court of the United States reaffirmed its holding in *Newport* in *Smith v. Wade*, 461 U.S. 30, 36, (1983), stating "[i]n *Newport* …we held that a municipality (as opposed to an individual defendant) is

---

[3] An arrest affected before obtaining a warrant from a magistrate does not fall within the immunity contemplated by S.C. Code § 15–78–60(3). *Wortman v. Spartanburg*, 310 S.C. 1, 3, 425 S.E.2d 18, 20 (1992).

immune from liability for punitive damages under § 1983." The Plaintiff is misguided as to the law regarding the availability of punitive damages under section 1983 against the city.

Punitive damages are not available under the Tort Claims Act. "No award for damages under [the Tort Claims Act] shall include punitive or exemplary damages or interest prior to judgment."  S.C. Code § 15-78-120; *see also McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 568 (D.S.C. 2013).  Therefore, as to Plaintiff's claims for punitive damages *against the City*, this court recommends the Defendants' motion to strike the amended complaint be granted.

2. Respondeat Superior

The Defendants' motion to strike seeks to strike any claims that the City is liable under section 1983 under a *respondeat superior* theory. (Dkt. No. 9-1 at 11.)  In response, the Plaintiff argues that the Tort Claims Act allows an action to be based on *respondeat superior.* (Dkt. No. 12-1 at 10.)    Both parties are correct in their positions.  Therefore, to the extent the Amended Complaint alleges the City is liable for the Plaintiffs' section 1983 under a *respondeat superior* theory, this court recommends the Defendants' motion be granted.

3. Joint and Several Liability

The Defendants contend the Tort Claims Act precludes joint and several liability when an alleged joint tortfeasor is a named party in addition to the governmental entity. (Dkt. No. 9-1 at 11.) In such cases, including the case at bar, the Tort Claims Act requires a special verdict form be returned specifying the proportionate liability of each defendant. S.C. Code § 15-78-100.  The Amended Complaint alleges the "*non-state tort claim* Defendants are jointly and severally liable…." (Dkt. No. 10 ¶18) (emphasis added).  Because the Amended Complaint does not seek

joint and several liability under the Tort Claims Act, this court recommends that the Defendants' motion to strike joint and several liability under the Tort Claims Act be denied.

## Conclusion

Accordingly, the Magistrate Judge **RECOMMENDS** that the Defendants' Motion to Dismiss and Motion Strike on Behalf of Defendants North Charleston Police Department, City of North Charleston, and Eddie Driggers (Dkt. No. 17) be **GRANTED** in part and **DENIED** in part. This court recommends that the 42 U.S.C. § 1983 claims against the Department be dismissed but allowed to proceed against the City and Driggers. This court recommends that the Tort Claims Act claims against the Department and Defendant Driggers be dismissed but allowed to proceed against the City. The court recommends that the prayer for punitive damages against the City and any section 1983 claims under *respondeat superior* be struck from the Amended Complaint. This court recommends that the Plaintiff's claims for joint and several liability under §1983 remain in the Amended Complaint.

**IT IS SO RECOMMENDED.**

January 25, 2016

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).